## SUPREME COURT.

### Daniel H Christie agt. Elihu K. Corbett.

In an action for the *recovery of possession of personal property*, where the defendant restores the possession to the plaintiff before the actual commencement of the action, and the plaintiff objects to the manner in which the property is returned by the defendant, as being injurious to him, but, nevertheless, accepts the possession, the action cannot be maintained.

It is error in such a case to let the cause go to the jury; the court should grant a *nonsuit*, or direct the jury to find a *verdict for the defendant.*

*Erie General Term, September,* 1867.

*Before* Marvin, Daniels *and* E. Darwin Smith, *Justices.*

Motion for a new trial upon exceptions first heard at general term.

Action to recover the possession of a horse, the property of the plaintiff, wrongfully detained by the defendant. The defendant took possession of the horse about October 27,

1866, and retained him about a week.  The plaintiff demanded the horse two or three times, and the defendant refused to deliver him up.

The plaintiff, on Saturday, November 3d, caused his attorney to prepare the papers in this action.  The papers were delivered to the sheriff for service, between six and seven o'clock in the evening, in Batavia.  The next day (Sunday) the defendant put the horse in the plaintiff's lot, and so informed the plaintiff.  The plaintiff put the horse in his own barn, where he was when the sheriff came to serve the papers in the action, on Monday, about noon.  The sheriff had just served the summons upon the defendant, and then called at the plaintiff's, and found the horse in the plaintiff's barn. The father of the defendant was with the sheriff.  The sheriff said, if the parties did not settle, he should put the horse in a third man's hands, and he put him into Mook's hands, a neighbor, where he remained some days, the plaintiff taking care of him, and then took him home.  The plaintiff went with the sheriff to Mook's, and led the horse (a colt).

The defendant first took the horse into his possession under a claim of right, as the horse was trespassing upon his premises.  The right of the defendant to retain the horse was disputed, and a suit threatened.

The defendant's counsel moved for a non-suit, on the ground that the horse being in possession of the plaintiff at the time the action was commenced, and not in the possession of the defendant, the action could not be sustained.

The motion was denied, and the defendant excepted.

The court charged that "the act of the defendant in turning the horse upon another lot on plaintiff's premises, was in itself a wrongful act on his part.  That if the jury should find that the defendant then intended to return the horse to the plaintiff's possession, and the plaintiff thereupon accepted the horse, and took him into his possession, then the action could not be sustained."

The counsel for the defendant then insisted that under this

charge and instruction, there was no question to submit to the jury.

The court declined so to hold, but submitted the case to the jury, and the defendant excepted thereto.

To understand the charge, it will be proper to state some more of the evidence. The plaintiff, as a witness, testified, that " the defendant told him he had put the horse into his (plaintiff's) lot; that he (plaintiff) objected to his doing it in that way; that he was a young horse, and would not be contented."

The horse had been put in the pasture next the road, not the lot he was pastured in.

The plaintiff took the horse from the lot and put him in the barn.

M. H. PECK, *for plaintiff.*
WAKEMAN & BRYAN, *for defendant.*

The action is for replevin in the *detinue*, pure and simple : for " wrongfully detaining plaintiff's grey horse." The judment demanded is one " awarding the possession of the said property to the plaintiff," and damages for detaining same.

Answer " denies that at the commencement of this action defendant detained" plaintiff's horse.

Also sets up that the horse was seized and taken into custody by defendant while trespassing on his premises, pursuant to chapter 459, laws of 1862; that due notice was given by a justice of the peace, and such statute freely complied with.

Also sets up the return of the horse by defendant to plaintiff, and its acceptance by plaintiff.

I. The undisputed evidence is, that the papers were not served until about noon, on Monday, November 5th. This action was not commenced until the actual service of process. (*Code,* § 99.)

The horse was at the very time in plaintiff's own stable. He having on the day before, taken the horse from his own

lot and put him into his own barn.   Mook, plaintiff's witness, says :   " When I first saw colt, Christie was leading him ; plaintiff fed the colt at my barn, and took him away."

Christie was told " on Saturday, if he would stop proceedings, they would give up the horse," and Wakeman told him same day, " it could be got along with without a law suit."

The horse thus trespassing on defendant's premises, was taken up in good faith, under act of 1862, and actually restored to plaintiff, and taken into his manual custody the day before service of papers.   It does not detract from the legal effect of the return, that the horse was put back into another or less suitable lot.   Nor does the grumbling of plaintiff, that he objected to his turning him back in that way ; that he would not be contented, &c., affect the fact of the actual return of the animal to plaintiff's adjoining lot, and the taking and shutting him up by plaintiff personally.

II.  Replevin (in the *detinet*) is simply an action to recover the possession of personal property (*Code*, § 206), and it claims the "immediate delivery" of such property.

" The action to recover the possession of personal property is based upon a wrongful detention of it, and such wrongful detention must exist at the time of the commencement of the action."   (*Savage* agt. *Perkins,* 11 *How. Pr. R.* 22 ; *Opin. by* BOWEN, *J. and cases cited ; Elwood* agt. *Smith,* 9 *How. Pr. R.* 528 ; *Roberts* agt. *Randall, Gen. Term Sup. Court,* 5 *Id.* 328.)

This is not a case where " the defendant before suit has wrongfully parted with the possession," to a third party. (*Brockway* agt. *Burnap,* 16 *Barb.* 315.)

The cases bearing on this point, are elaborately reviewed in *Nichols* agt. *Michael* (23 *N. Y. R.* 264 *to* 275).   Says SELDEN, J. (*p.* 272) :  " Where a person is in possession of goods belonging to another, which he is bound to deliver on demand, if he parts with that possesssion to one who refuses to deliver them, he is responsible in *detinue* equally with the party refusing."

We insist that this is not a case where, in any sense, it can be claimed that the defendant wrongfully or improperly parted with the possession of the horse, or where he delivers pos session to another before action brought.

Hence it follows that a non-suit on the whole case should have been granted by the court, it appearing that there had been an actual return of the horse by defendant, and an actual receiving of the horse into possession by plaintiff before suit commenced.

This particular form of action will not lie, where, in point of fact, the plaintiff has the identical property in his own custody when the action is commenced. Such a ruling works no injustice. The party can still have redress for the original taking and detention. He can recover damages therefor, but it is a palpable absurdity to award to him possession of that which he already has.

III. As matter of law, the facts disclosed in the evidence constituted an acceptance of the horse by plaintiff, as set up in answer number three.

No other objection was made by plaintiff, than as to the horse being too young to be put into *that* lot, and while so saying, at the same time he *took up* the animal and put him into his barn. The taking of the horse by the sheriff from plaintiff's barn, and turning him over to Mook—to be fed and taken care of by plaintiff—was a nullity so far as the sheriff was concerned, and a farce on the part of the plaintiff.

IV. Defence number two was ruled out *in toto*, on the ground that the court of appeals had expressly decided the law of 1862, in relation to strays, as wholly unconstitutional and void. We had no access to any opinion or decision that affect this point, and hence desire the point should be reviewed on this motion.

*By the court,* MARVIN, J. By the Code (§ 99), the action is commenced when the summons is served. At the time this action was commenced, the horse was in the actual pos-

session of the plaintiff. The defendant had returned the
horse, and made no further claim to detain him. It seems
to me that this simple statement must decide the case. The
action was to recover the *possession* of the horse, *wrongfully
detained.* At the time the action was commenced, the wrong-
ful detention had ceased, and the plaintiff was in full posses-
sion of his property. As I understand it, the learned justice
at the circuit was of the opinion, and so charged, that if the
defendant, by turning the horse into the plaintiff's lot on Sun-
day morning, intended to return the horse to the plaintiff's
possession, and the plaintiff accepted the horse, and took him
into possession for that purpose, the action could not be sus-
tained.

The counsel for the defendant, in view of this charge,
claimed that there was no question for the jury, but that the
court should dispose of the case. The counsel was, I think,
right. Assuming that there was some importance in the
question of the intention of the parties, I think the evidence
was so decisive, that the court should have decided the case.
It appears that the defendant took up the colt as a trespasser,
and was proceeding under the act of 1862, and had incurred
some costs. He was willing the plaintiff should have the
horse, on paying the costs. This the plaintiff was unwilling
to do. Counsel was taken in Batavia, on Saturday, when the
defendant was probably advised that the statute under which
he was proceeding would not protect him, and he concluded
to restore the horse to the plaintiff. He did this on Sunday
morning, by putting him into plaintiff's pasture, adjoining
the highway, and he notified the plaintiff thereof.

What objection did the plaintiff make, as he states as a
witness? He says: "I objected to his turning him back in
that way; that he was a young horse, and would not be con-
tented; it was Sunday morning; he turned him into the lot
next to the road, not the lot he was pastured in." In another
place he says: "I took the horse from my lot, and put him
in my stable." Now as I understand this evidence, there was

an absolute, unqualified return of the horse, and the plaintiff unqualifiedly accepted him. The only objection he made was, that "the colt was put into the wrong pasture; that he was a young horse, and would not be contented;" and thereupon he went and caught the colt, and put him in the stable. I do not see any occasion for the remark of the judge, that "the act of the defendant in turning the horse upon another lot of the plaintiff's premises, was in itself a wrongful act on his part." But if this was even so, the plaintiff waived it, and went and took the colt and put him in the stable.

There was no question for the jury. The court should have decided the matter, and non-suited the plaintiff, or directed the verdict for the defendant. The jury must have found, under the charge, that the defendant did not intend to return the horse to the plaintiff's possession, or that the plaintiff did not accept the horse, or take him into his possession for that purpose; a finding, as I think, directly against the evidence. We are, however, examining the case only upon the exceptions. I think the exception to the refusal to non-suit was well taken; also to the refusal to direct a verdict.

This case does not belong to the class of cases referred to by the plaintiff's counsel, where the defendant has wrongfully parted with the property to a *third person*, before the commencement of the action. (*Brockway* agt. *Burnap*, 16 *Barb.* 309; *Nichols* agt. *Michael*, 23 *N. Y. R.* 264.)

In this case the defendant restored the horse to the plaintiff, who took him into his possession, and had full power and control over him before the action was commenced.

There must be a new trial, costs to abide the event.